*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *VICTORIA GURNEY,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 2:11-cv-158-NT* |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| *Defendant* | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI")

appeal raises the question of whether the commissioner supportably found the plaintiff capable

of performing work existing in significant numbers in the national economy.  I recommend that

the decision of the commissioner be vacated, and the case remanded for further development.

The decision in question was issued following this court's reversal and remand of a prior

decision of the commissioner because of the prior decision's reliance at Step 5 on the so-called

"Grid," Appendix 2 to Subpart P, 20 C.F.R. § 404.  *See* Record at 628-35, 639.  In the wake of

that remand, the Appeals Council directed the administrative law judge to offer the plaintiff an

opportunity for a new hearing, take any further action needed to complete the administrative

record, and issue a new decision.  *See id.* at 639.  The administrative law judge did so, convening

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on March 16, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

a hearing at which the plaintiff testified, as did her case manager Linda James, mental health expert James M. Claiborn, Ph.D., and vocational expert Warren Maxim. *See id*. at 541, 558.

Post-remand, pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of borderline intelligence, mood disorder, and polysubstance abuse, Finding 3, Record at 544; that she retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: she was limited to work requiring simple instructions, could perform simple tasks, could sustain two-hour blocks of attention and concentration sufficient for simple tasks, could not interact with the public, could interact with co-workers and supervisors occasionally, and could adapt to routine changes, Finding 5, *id*. at 545; that, considering her age (18 years old, defined as a younger individual, on the alleged disability onset date), education (limited), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 550; and that, therefore, she was not disabled from July 4, 2007, her alleged disability onset date, through November 24, 2010, the date of the decision, Finding 11, *id*. at 551.[2] The Decision Review Board declined to disturb the decision, *see id*. at 533-35, making the decision the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

---

[2] Page 551 of the electronic record, filed at Docket No. 8, is illegible. I directed that the commissioner file a legible copy, and he did so. *See* Docket No. 13. The plaintiff was insured for purposes of SSD benefits, on her father's earnings record, through January 14, 2010. *See* Finding 1, Record at 9.

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff seeks reversal and remand on the basis that the administrative law judge predicated his Step 5 determination on vocational expert testimony that did not support a finding that she was capable of performing the four representative jobs upon which the administrative law judge relied. *See* Plaintiff's Itemized Statement of Error ("Statement of Errors") (Docket No. 10) at 14-15. I agree, and accordingly recommend that the court vacate the decision and remand this case for further proceedings.[3]

Adjudicators are obliged to identify and resolve discrepancies between vocational evidence and the *Dictionary of Occupational Titles* (U.S. Dep't of Labor, 4th ed. rev. 1991)

---

[3] At oral argument, the plaintiff's counsel withdrew Step 2 and Step 4 arguments made in his client's statement of errors. *See* Statement of Errors at 7-14.

("DOT") before relying on a vocational expert's evidence to support a Step 5 finding. *See* Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2012) ("SSR 00-4p"), at 244 ("When there is an apparent unresolved conflict between VE [vocational expert] or VS [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.").

Based on Maxim's testimony at hearing, the administrative law judge found the plaintiff capable of performing the representative jobs of garbage collector, DOT § 955.687-022, sandwich board carrier, DOT § 299.687-014, cleaner, DOT § 323.687-014, and harvest worker, DOT § 402.687-014. *See* Record at 550-51. Yet, the plaintiff's attorney brought to Maxim's attention during cross-examination that, according to the DOT, all four jobs require a Level 4 General Learning Ability and a Level 4 Verbal Aptitude, with Level 4 defined as "Lowest 1/3 *Excluding Bottom 10%*." *See id*. at 589-90 (emphasis added); DOT §§ 955.687-022, 402.687-014, 323.687-014, 299.687-014.

Testing performed on the plaintiff in 2005, which formed the predicate for the finding that she suffered from borderline intelligence, yielded a verbal comprehension score in the eighth percentile range, a working memory index in the sixth percentile range, and a full-scale IQ in the seventh percentile range, as well as a perceptual reasoning score in the 30th percentile range and a processing speed index in the 13th percentile range. *See* Record at 152-53. The examiner felt that the test results were an accurate reflection of the plaintiff's abilities at the time, *see id*. at 154-55, and Dr. Claiborn testified at the plaintiff's post-remand hearing that this was a

"reasonable range" for the plaintiff's IQ, *see id*. at 581.[4] The administrative law judge evidently deemed the test scores valid, finding that the plaintiff did suffer from a severe, medically determinable impairment of borderline intelligence. *See* Finding 3, *id*. at 544.

Maxim testified that he was surprised that the DOT indicated that jobs as basic as garbage collector and harvest worker could not be performed by a person in the lowest 10th percentile in verbal ability or general learning ability. *See id*. at 591. He said that he could offer no explanation for why such scores would preclude someone from performing the job of harvest worker. *See id*. at 592. On the other hand, he testified he had previously administered the general aptitude test battery that the Department of Labor had relied upon in rating positions and "found it to be pretty accurate and reliable." *Id*. at 591-92. He stated: "I can tell you what the worker characteristics say and I couldn't say it would exclude an individual, but I think it would be reasonable to assume that an individual would have difficulty in the 6th or 7th percentile of the general population." *Id*. at 592-93. He acknowledged that it would be a "reasonable approach[,]" to ensure job success, to provide individuals in those percentiles with a structured setting, job coaching, or some similar assistance. *See id*. at 593.[5] He stated that there are jobs available for people in the bottom 10 percent but that his software program did not allow for sorting by general aptitude test battery, preventing him from being able to provide representative jobs for such individuals. *See id*. at 591.

---

[4] Dr. Claiborn testified that any active substance use by the plaintiff would have affected her performance and intellectual assessment. *See* Record at 582. However, he acknowledged that "[i]t gets very difficult to nail things . . . to the wall here." *Id*. In any event, the question before the administrative law judge was whether the plaintiff was disabled based on her combined impairments, including substance abuse. See 20 C.F.R. §§ 404.1535, 416.935. Only if she had been found disabled would it have been necessary, or appropriate, to consider whether she would remain disabled in the absence of drug and alcohol abuse. *See id*.

[5] As the plaintiff observes, *see* Statement of Errors at 11, Donna M. Gates, Ph.D., a Disability Determination Services ("DDS") examining consultant, also found that she might "need increased supervision to learn vocational skills and responsibilities[,]" Record at 304.

The administrative law judge did not address the discrepancy between the DOT's description of the aptitudes required to perform the four jobs supplied by Maxim and the plaintiff's intelligence testing scores, which indicated that she could perform none of those jobs. *See id*. at 550-51. The error was not harmless. Although Maxim testified that he was "surprised" by the DOT ratings, he did not indicate that a person in the bottom 10 percent could in fact perform the jobs at issue. To the contrary, he suggested that the successful performance of those jobs by such individuals would be difficult, perhaps necessitating accommodations such as a structured setting and job coaching. Further, while Maxim acknowledged that there are jobs that can be performed by persons in the bottom 10 percent, he conceded that he could not name any such jobs because of limitations in his software program.

At oral argument, counsel for the commissioner contended that the administrative law judge properly rejected this portion of Maxim's testimony as outside the scope of his expertise, Maxim having, in effect, translated raw IQ scores into an RFC opinion. She argued that the plaintiff's ability to perform the four jobs at issue was supported by the testimony of Dr. Claiborn, who did have the expertise to translate the raw evidence into functional capacity and had, in fact, done so.

There are two problems with this argument. First, as the plaintiff's counsel pointed out, it runs afoul of *SEC v. Chenery Corp*., 332 U.S. 194 (1947), which states, in relevant part:

> [A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery*, 332 U.S. at 196. The administrative law judge did not reject the relevant portion of Maxim's testimony on the basis that Maxim lacked the expertise to make such judgments. Rather, he ignored it.[6]

Second, it is hardly clear that Maxim exceeded the bounds of his expertise. He testified, in effect, that in his experience, people with aptitude/IQ scores such as those of the plaintiff had difficulty performing the jobs at issue. This, in my view, is no different than testifying that a person limited to simple tasks can or cannot perform certain jobs. In addition, the plaintiff's counsel's questioning of Maxim regarding the apparent conflict between Maxim's testimony and the DOT job descriptions was consistent with the dictates of SSR 00-4p. *See* SSR 00-4p at 244. Regardless of whether Dr. Claiborn and the administrative law judge meant to subsume the plaintiff's IQ scores in their RFC findings, the DOT indicated that a person with such scores, which the administrative law judge evidently accepted as valid, *see* Finding 3, Record at 544, could not perform the jobs at issue. The plaintiff's counsel called this discrepancy to both Maxim's and the administrative law judge's attention, and it required resolution. *See* SSR 00-4p at 244.

In the circumstances, Maxim's testimony, as a whole, did not supply substantial evidence in support of the administrative law judge's Step 5 finding that a person with the plaintiff's limitations was capable of performing work existing in significant numbers in the national economy. Accordingly, reversal and remand are warranted.

---

[6] An exception to the *Chenery* rule exists when a remand "will amount to no more than an empty exercise" because, for example, "application of the correct legal standard could lead to only one conclusion[.]" *Ward v. Commissioner of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000) (citation and internal quotation marks omitted). Counsel for the commissioner did not invoke that exception in this case, and I find it inapplicable.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be

**VACATED** and the case **REMANDED** for further proceedings consistent herewith.


### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*


Dated this 27th day of March, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge